ABNER SMITH, BY JOHN B. HINES, GUARDIAN, APPELLANT, *v.* JOHN HARRIS, RESPONDENT.

ASSAULT AND BATTERY—ACTION FOR DAMAGES—EVIDENCE OF GENERAL CONDUCT.—In an action for damages for assault and battery upon an infant, the general conduct of the defendant towards the infant is admissible, to show malice or to rebut evidence of malice.

APPEAL from Benton County.

This is an action of trespass for personal injuries. The complaint sets out nine separate causes of action, and claims damages in the aggregate sum of ten thousand dollars. It is alleged that in September, 1865, the appellant, then six years of age, was placed by his father in the care and control of the respondent, under an agreement by which he was to so remain. The assaults are alleged to have been committed in 1865 and 1866, while the respondent stood in the relation of *loco parentis* to the appellant. On the trial the appellant called witnesses to prove the various assaults alleged. He also called a Mrs. Stewart as a witness, who testified that she knew the appellant while he lived with the respondent, during a period of about one and one half years; that "the child" (meaning the appellant) "could not stay with them" (meaning the respondent and his wife); that he had been whipped when he came to the house of witness "all over his back, and a hack on his head, as if done with a knife, gaped open." She also, over the objection of respondent's counsel, testified as follows: "We washed plaintiff and fixed up for him as good as we could, poor little boy;" that he was "all bruised;" that there were black spots and stripes on his back; that his arm had been broken, but was then nearly well; that it hurt him to lift anything and was "kind of stiff." Four other witnesses testified substantially the same as this witness as to the appearance of the appellant's back and arm. The appellant also offered evidence, which was admitted, tending to show that the general treatment of the appellant by the respondent was harsh and cruel; that the appellant was poorly clad, was overworked and otherwise abused. The purpose of this testimony was to show express malice.

For the purpose of disproving such malice, a witness, John Buchanan, was allowed to testify that he was at the house of the respondent during the winter of 1866, while the appellant was living there, and made his home there; that the appellant was well treated, as well as any child in the neighborhood—as well as though he had been respondent's own child. Several other witnesses also testified to the general good treatment of the appellant by respondent while the former was living with the respondent and during the time the trespasses were alleged to have been committed. This testimony was admitted under objection of appellant's counsel, as the other had been admitted under objection of counsel for respondent.

*John Kelsay*, for appellant.

*John Burnett and R. S. Strahan*, for respondent.

By the Court, BOISE, J.:

It is claimed by the appellant that the admission of evidence of general good treatment of appellant by respondent during the time appellant lived with respondent—the same being the time during which the assaults and batteries are alleged to have been committed—is error. In all cases of willful assaults and batteries exemplary damages may be given by the jury, and to increase these damages express malice may be shown by the plaintiff. Express malice may be shown, says Mr. Greenleaf, vol. 3, sec. 145, by evidence of a deliberately formed design to kill another, and the same rule applies to all malicious assaults; and such design may be shown by the circumstances attending the battery—by threats, lying in wait, previous quarrel or grudge. In a case like this it is competent for the appellant to show that the general conduct of the respondent towards this child was such as to show that he had a spite at the child, evincing a cruel disposition towards him and a desire to abuse him, and this was the tendency of the evidence adduced by appellant.

In reply to and to rebut the presumption of express malice, it was competent for the respondent to show that by his acts

he had evinced a kind disposition towards the appellant during the time that these continuing assaults were being committed. Such evidence would be very proper, in enabling the jury to come to a just conclusion in a case like the present one, where the truth of the evidence of the appellant must have been very seriously questioned, as in the case of the breaking of his arm, where he is contradicted by the physician who reduced the fracture, who says the appellant told him that he fell from the woodpile and broke it. (3 Greenl., sec. 144; Hil. on Remedies and Torts, sec. 15, p. 428, a; 14 Cal. 554.)

The respondent, it seems by the testimony, was standing in the position of *loco parentis*, and had the lawful right to control appellant by reasonable corporeal punishment. Such punishment, even when necessary, might have been falsely represented, and the motives of the respondent misrepresented. To enlighten the jury on this subject, the general conduct of the respondent towards the appellant was properly shown to the jury by both parties, for such evidence was almost the only means of showing the motives and disposition which actuated the respondent in his conduct towards the appellant during the time of the alleged assaults and batteries. There being no error in the judgment of the court below it will be affirmed.